IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DENNIS O'NEAL LEE (#101953),**  **PLAINTIFF**

vs.  **CIVIL ACTION NO.: 4:12cv114-MPM-DAS**

**TIMOTHY MORRIS,**  **DEFENDANT**

**OPINION AND ORDER**

Plaintiff, proceeding pro se and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 alleging that Defendant, Timothy Morris, was deliberately indifferent to Plaintiff's serious medical condition. Specifically, he alleges that Defendant, as Warden of the Mississippi State Penitentiary, refused to allow Plaintiff to wear a medically prescribed head covering, and that Plaintiff suffered serious sunburns to his scalp as a result. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, and Plaintiff has responded. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that Defendant's motion should be granted, for the reasons that follow.

**Procedural History**

Plaintiff is an inmate in the Mississippi Department of Corrections and is currently housed at the South Mississippi Correctional Institution. He filed suit pursuant to 42 U.S.C. § 1983 against the following defendants: Wexford Health Source, Inc.; Christopher Epps; E.L. Sparkman; Billy Smith; Earnest Lee; Vicky Knowels; Timothy Morris; Gloria Perry; Norma Evans; Dr. Lorenzo Cabe; Dr. Dennis Gregory; Dr. Kim; Dr. Juan Santos; Robert Tucker; John Doe; and James Doe. He alleged that some defendants failed to ensure that the proper sanitary

1

regulations were followed when the State gave haircuts to prisoners, which resulted in him contracting a scalp infection that the other defendants failed to properly treat.

Plaintiff clarified his allegations at a *Spears*[1] hearing held on January 24, 2013. After the hearing, the Court dismissed Plaintiff's claim that the defendants acted with deliberate indifference to his serious medical needs by failing to adequately treat his scalp infection, and it dismissed his claim relating to the defendants' alleged failure to follow State sanitary regulations.[2] The Court retained Plaintiff's claim alleging that Timothy Morris, hereinafter "Defendant", acted with deliberate indifference to Plaintiff's serious medical needs by confiscating Plaintiff's head scarf. This is the sole remaining claim before the Court.

**Plaintiff's Allegations**

Plaintiff alleges that he received a scalp infection sometime after his arrest in 2009 as the result of unsanitary prison barbering practices and began receiving treatment for his scalp condition at the Carroll Montgomery Regional Correctional Facility ("CMCRCF") in March 2010. Plaintiff maintains that when treatment there proved to be largely unsuccessful, he was transported to the Mississippi State Penitentiary ("MSP") for more intense treatment and for the possibility of an outside referral. Plaintiff contends that he was transported between CMCRCF and MSP for treatment several times between November 2010 and August 2012.

One of Plaintiff's prescribed treatments was a therapeutic coal tar extract shampoo, which makes him more susceptible to sunlight. Plaintiff alleges that Dr. Okunoren at CMCRCF, gave

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] For a more complete discussion of Plaintiff's dismissed claims, *see* docket entries no. 11, no. 27, and no. 86.

him a medical profile[3] that allowed him to wear a head scarf to prevent his head from being sunburned, as well as to prevent the spread of his contagious infection.[4]

Plaintiff contends that he was given medical scarf profiles in November 9, 2010 and June 9, 2011. Plaintiff maintains that he was transferred to MSP in September 2011, and that he gave his profile papers to a lieutenant at that time. He alleges that the medical profile was never returned to him, and that he was transported back to CMCRCF in September 2011. He maintains that he was transported to MSP again in February 2012, and that, while he did not have the profile in his possession, he encountered no problems wearing his black medical scarf once prison officials saw the condition of his head.

Plaintiff alleges that on July 31, 2012, however, a lieutenant ordered Plaintiff to remove his head scarf and took him to Defendant, who had recently become a warden at MSP. Plaintiff contends that Defendant refused to allow Plaintiff to wear the head scarf and informed his officers to write Plaintiff a Rule Violation Report ("RVR") if they saw Plaintiff with anything on his head. Plaintiff alleges that he wrote Defendant and explained the necessity of the head scarf, but that Defendant failed to respond. As a result, Plaintiff maintains, he received several RVRs for wearing a head covering. He contends that when he finally decided not to wear the head covering for fear of getting more RVRs, he received sunburn. Specifically, Plaintiff maintains that he received excessive sun exposure during trips to the dining hall, where inmates are forced

---

[3] Neither Plaintiff nor Defendant explain or define "profile." The Court presumes it is akin to a medical permission slip.

[4] Plaintiff maintains that he was diagnosed with methicillin-resistant Staphylococcus aureus ("MRSA"). The diagnoses in his medical records include Tinea Capitis with kerion formation and dissecting cellulitis of the scalp. (*See* R. to Mot. Summ. J., Ex. A).

3

to stand outside for up to thirty minutes at times. One of these sunburns was so severe, he argues, that he was rendered unconscious and had to be transported to the hospital by ambulance.

Plaintiff contends that not only was he forced to suffer needlessly as a result of the confiscation of his head scarf, but that Defendant also subjected other inmates to an unnecessary risk of contracting his infection. He contends that Defendant finally dismissed Plaintiff's RVRs and allowed him to resume wearing a head covering after Plaintiff lost consciousness on August 28, 2012, which Plaintiff maintains is evidence of Defendant's awareness of his wrongdoing. Plaintiff asserts that he is entitled to an award of damages and an order compelling Defendant to properly treat his scalp condition.

**Defendant's Allegations**

Defendant alleges that he is entitled to immunity under the Eleventh Amendment to the United States Constitution for the claim against him in his official capacity. He also argues that, as he did not violate any of Plaintiff's clearly established federal rights, he is entitled to qualified immunity as to the claim against him in his individual capacity. Defendant admits that he refused to allow Plaintiff to wear a head scarf. He contends, however, that he was not deliberately indifferent to Plaintiff's medical needs and argues that he never saw a prescription allowing Plaintiff to wear a "homemade scarf." (*See* Mot. Summ. J., Ex. B). Defendant alleges that Plaintiff received treatment for his medical condition, and that his medical records do not contain a profile allowing Plaintiff to wear a scarf on his head. (*See id.*, Ex. A). He notes that he could not have allowed Plaintiff to wear a homemade scarf without a prescription from medical professionals, as doing so would allow Plaintiff to violate prison rules. (*See id.*, Ex. B). He maintains, therefore, that his actions were objectively reasonable.

Defendant also argues that Plaintiff is not allowed to recover damages for any mental or emotional injury, as he cannot demonstrate that he suffered any physical injury as a result of Defendant's actions. He maintains that any injury suffered by Plaintiff is *de minimis*, which is insufficient to sustain his claim.

## Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

5

Because Plaintiff is proceeding pro se, his pleadings are construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**Discussion**

**A. Claim against Defendant in his official capacity**

Defendant claims that he is entitled to the grant of summary judgment, as he is immune from suit under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars suits in federal court by a citizen against his own state or against a state agency. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state employee in his official capacity is a suit against the office and, as such, is the same as suit against the state itself. *Will v. Michigan, Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). The Mississippi Department of Corrections is an arm of the State of Mississippi and enjoys the same immunity. *Hines v. Mississippi Dept. of Corrections*, 239 F.3d 366, 2000 WL 1741624 at *4 (5th Cir. 2000). The Supreme Court has held that "[t]here can be no doubt. . . that suit against [a] State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit," *Alabama v. Pugh*, 438 U.S. 781, 782 (1978), or unless Congress has explicitly revoked immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

Section 1983 does not abrogate the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981). Mississippi has not consented to the filing of § 1983 suits against it in federal court. *See, e.g., McGarry v. Univ. of Mississippi Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (noting that Mississippi "expressly preserved sovereign immunity to suit in federal court when it enacted the

Mississippi Tort Claims Act"). Accordingly, Defendant is entitled to Eleventh Amendment immunity for the claim against him in his official capacity.

**B. Claim against Defendant in his individual capacity**

Defendant claims that he is entitled to summary judgment on the basis of qualified immunity. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established constitutional rights of which a "reasonable person would have known." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). It is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A two-step analysis is applied to resolve claims of qualified immunity. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). In one step, the court views the evidence in the light most favorable to the plaintiff and determines whether evidence exists that the individual defendant(s) violated the plaintiff's constitutional rights. *Id*. A court must also "consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id*. (citation omitted). A defendant's actions are deemed "objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the conduct at issue violated" clearly established law. *Thompson v. Upshur County Texas*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted) (emphasis in original). The sequence of the two-prong inquiry is not mandatory; a court may rely upon either prong of the defense in its analysis. *See, e.g., Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted).

Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden

of rebutting the defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2003). This burden does not allow him to "rest on conclusory allegations and assertions," but rather, requires him to "demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

Plaintiff argues that Defendant knew of Plaintiff's sensitivity to sunlight but nonetheless confiscated his medically prescribed scarf, which resulted in Plaintiff receiving a severe sunburn that required hospitalization. Plaintiff's medical records, which are attached as an exhibit to Defendant's motion for summary judgment, demonstrate that Plaintiff received medical attention relating to his scalp condition more than forty-five times between November 2010 and December 2012. (*See* Mot. Summ. J., Ex. A). He was prescribed various medications throughout that time period. At least as early as November 2010, Plaintiff was prescribed a therapeutic tar gel shampoo that cautions against exposing treated skin to sunlight, as the medication increases the tendency to sunburn for up to twenty-four hours after application. (*See id.*, doc. no. 63-3, p. 2; *see also* R. to Mot. Summ. J., doc. no. 80, p. 28).

Particularly relevant to Plaintiff's claim are his medical records from July and August 2012. Prior to the alleged unconstitutional action by Defendant, Plaintiff was seen at CMCRCF on July 5, 2012, by Dr. Lorenzo Cabe, who changed Plaintiff's medications and ordered him to engage in no outdoor activities for fifteen days. (Mot. Summ. J., Ex. A, doc. no. 64-1, p. 34). On July 18, 2012, Dr. Cabe again saw Plaintiff and ordered him a "lay-in" without a food tray for one week. (*Id.*, p. 64).[5] On July 23, 2012, Plaintiff submitted a medical services request form

---

[5] A "lay-in" is presumably a prescription exempting an inmate from work.

8

stating that it was too hot for him outside, and that his shampoo cautioned against excessive sun exposure. (*Id*., doc. no. 64-3, p. 53). On July 24, 2012, in response to the services request, Plaintiff was treated by Nurse Practitioner, Larry Tucker. (*Id*., doc. no. 64-1, p. 17). NP Tucker noted that Plaintiff did not "want to go to field" due to scalp exposure, but he recorded that Plaintiff was wearing a hat at that time that protected Plaintiff's scalp from sunlight. (*Id*.).

Plaintiff alleges that the hat mentioned by NP Tucker was Plaintiff's medically prescribed head scarf, which was confiscated by Defendant on July 31, 2012. Plaintiff maintains that on that date, Lieutenant Willis ordered him to remove the scarf and took him to Defendant, who confiscated the scarf and ordered his staff to write Plaintiff an RVR if Plaintiff was caught wearing a head covering. On July 31, 2012, Plaintiff completed an "Offender Request Form" complaining about the confiscation of his head scarf and informing Defendant that Defendant was exposing other inmates to contagion by refusing to allow Plaintiff to cover his head. (*See* R. to Mot. Summ. J., doc. no. 80, p. 23). The record demonstrates that similar requests were made by Plaintiff to Defendant on August 16, August 19, and August 21, 2012, where Plaintiff informed Defendant of his sun sensitivity and requested that his scarf be returned. (*Id*. at pp. 24-26).

The first allegation Plaintiff made of a sunburn after the confiscation of his head scarf occurred on August 6, 2012. On August 6, 2012, Plaintiff submitted a medical services request form stating that he had been sunburned on the top of his head. (Mot. Summ. J., Ex. A, doc. no. 64-3, p. 58). He submitted a second request on August 9, 2012, noting that he had been sunburned and needed to see the doctor. (*Id*. at p. 59). On August 10, Plaintiff was seen by Nurse Ford and complained that his head hurt, that he was sunburned, that his scalp was leaking

9

blood and puss, and that his hair was falling out. (*Id*., doc. no. 64-1, pp. 5-7). Nurse Ford noted lesions to Plaintiff's scalp and "pea sized amounts of blood" inside of his cap, but she did not find any evidence of active bleeding or burns to the scalp. (*Id*. at pp. 5-6).

On August 20, 2012, Plaintiff submitted a medical services request stating, among other things, that he had been sunburned. (*Id*., doc. no. 64-3, p. 97). The following day, Plaintiff was treated by Nurse Ford, who noted that Plaintiff had swollen areas of his scalp, and that some areas had signs and symptoms of "possible sunburn." (*Id*., doc. no. 64, p. 121). Nurse Ford also noted that Plaintiff complained of hair loss and swollen lymph nodes, and he requested that he be provided a medical scarf. (*Id.*). Plaintiff was prescribed one tube of Silvadene cream and directed to "apply to burn." (*Id*. at p. 119).

On August 28, 2012, Plaintiff arrived at the MSP hospital by ambulance around 11:00 a.m. (Mot. Summ. J., Ex. A., doc. no. 64, p. 116). He stated to Nurse Tucker that he "got too hot and passed out." (*Id.*). Nurse Tucker recorded that Plaintiff refused to answer questions, and she noted the presence of a small amount of bloody drainage on the stretcher paper from Plaintiff's scalp. (*Id.*). Dr. Santos also evaluated Plaintiff, recording that Plaintiff complained of dizziness but refused to answer questions. (*Id.* at p. 114). Plaintiff was ordered to be released back to his unit after Dr. Santos evaluated him. (*Id*. at 116). In a medical services request form Plaintiff submitted on August 28, 2012, he claims that he had been taken to the hospital earlier in the day "for an anxiety attack." (*Id*., doc. no. 64-3, p. 99).

On August 30, 2012, Nurse Practitioner Tucker attempted to assess Plaintiff regarding his complaints of a sunburn. (*Id*., doc. no. 64, p. 108). NP Tucker noted that Plaintiff was not seen due to behavioral problems, as he "refused to complete vital signs and was verbally abusive."

(*Id.*). NP Tucker assessed that Plaintiff was malingering. (*Id.*).

Plaintiff's claim implicates the Eighth Amendment, under which prison officials have a duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted). This duty requires prison officials to ensure that inmates receive, among other things, adequate shelter and medical care, and it requires officials to "take reasonable measures to guarantee the safety of the inmates." *Id*. (citations omitted). Deliberate indifference on the part of prison officials as to these needs constitutes a violation of the Eighth Amendment. *Id*. at 834.

In order to state a claim under § 1983 of deliberate indifference to an inmate's medical condition, the inmate must demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837 (quotations omitted). Negligence will not support the finding of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Rather, deliberate indifference requires the inmate to show that prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted).

As an initial matter, the Court considers Defendant's claim that he is entitled to qualified immunity under the doctrine of *respondeat superior* because he was not personally involved in any alleged constitutional deprivation. A supervisory official is not liable under § 1983 unless he is either personally involved in the constitutional violation, or unless there exists "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Plaintiff has alleged and Defendant has

conceded a personal involvement in the confiscation of Plaintiff's head scarf. Accordingly, the Court finds the doctrine of *respondeat superior* inapplicable in this case.

The Court also determines that Plaintiff was prescribed a shampoo that heightened his sensitivity to sunlight, but it also finds that there is no medical restriction in his records prohibiting him from being exposed to sunlight during the period of time he complains of in this suit.[6] By Plaintiff's admission, he was exposed to sunlight after the confiscation of his head scarf upon entering and exiting the dining hall. This exposure was not a prolonged, severe exposure to sunlight that posed a substantial risk of serious harm. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (inmate's Eighth Amendment rights were violated where he was handcuffed for seven hours to a hitching post with his shirt off in the sun while guards denied him adequate water and taunted him). Rather, it was a limited exposure necessary only for purposes of transferring Plaintiff from one area of the prison to another. Moreover, the RVRs submitted by Plaintiff demonstrate that he received RVRs in August 2012 for refusing to remove his head covering upon entering or while inside the dining hall. (*See, e.g.*, R. to Mot. Summ. J., doc. no. 80, pp. 75-79). The RVRs submitted by Plaintiff suggest that Plaintiff was not forced to be exposed to sunlight, but rather, was issued a rule violation for failing to comply with orders once inside of the dining hall. Accordingly, the Court finds that the competent summary judgment evidence does not support a determination that Defendant exposed Plaintiff to a substantial risk of serious harm and then responded with deliberate indifference to that risk. *Gobert*, 463 F.3d at 345-46.

---

[6] The only medical record prohibiting Plaintiff's exposure to sunlight was Dr. Cabe's fifteen-day order issued on July 5, 2012, which is outside of the time frame Plaintiff alleges Defendant took wrongful action against him. (*See* Mot. Summ. J., Ex. A, doc. no. 64-1, p. 34).

The Court directed MDOC to obtain any written profile contained in Plaintiff's medical records and to obtain a statement from Nurse Henson and Dr. Okunoren stating whether Plaintiff was issued a written profile for a head covering. (*See* doc. entry no. 85). In response, counsel for Defendant filed a notice stating that Dr. Okunoren and Nurse Henson were not employees of MDOC and could not be located in order to obtain a statement. (*See* doc. entry no. 87). The parties contest whether Plaintiff was issued a medical profile that allowed him to wear a head covering. There is, however, no medical profile for a head covering contained in Plaintiff's medical records.

Plaintiff alleges that Defendant became Warden of Plaintiff's unit in July 2012, which is the same month Plaintiff complains that his head scarf was confiscated. (*See, e.g.*, R. to Mot. Summ. J., doc. no. 80, p. 13). Defendant states that he was not aware of any medical profile that would allow Plaintiff to wear the head covering, and he alleges that Plaintiff's "homemade scarf" was against prison regulations. (*See* Mot. Summ. J., Ex. B, Aff. Of Timothy Morris). Absent medical authorization in the records, it is reasonable that a prison warden would refuse to allow an inmate to wear a head covering that is against prison regulations.[7] Accordingly, even if the Court were to assume that Defendant's actions violated Plaintiff's constitutional rights, Plaintiff has failed to carry his burden of demonstrating that "all reasonable officials similarly situated would have then known that the alleged acts of the [D]efendant[] violated the United States

---

[7] Plaintiff points to two specific medical records that he maintains supports his claim that he had an order allowing him to wear a medical head scarf. The first is a medical record dated November 9, 2010, the word "Profile" is written beside the notation that Plaintiff has been prescribed a therapeutic shampoo. (*See* Mot. Summ. J., doc. 64-3, p. 2). The word "Profile" is also written on a June 9, 2011, note beside the medication "Diphenydramine." (*Id.*, doc. no. 642, p. 121). There is not, however, an order, prescription, or note contained in Plaintiff's medical records prescribing the use of a medical head scarf.

Constitution." *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001).

Finally, the Court notes that Plaintiff also argues that Defendant's confiscation of his head scarf and refusal to allow Plaintiff to wear a head covering violates the constitutional rights of other inmates to be free from the risk of communicable disease. Plaintiff cannot assert the constitutional rights of other inmates, *see, e.g., Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986), and he cannot support his claim with this argument.

Defendant is entitled to qualified immunity.

**C. Absence of injury**

Under the Prison Litigation Reform Act, mental and emotional damages are not allowed unless the prisoner suffered a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The injury must be more than *de minimis* to be compensable. *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 631 (5th Cir. 2003).

Plaintiff claims he was severely sunburned on August 3, 15, and 28, 2012. (R. to Mot. Summ. J. p. 14). However, Plaintiff's medical records created on and around those dates do not support a conclusion that Plaintiff received a substantial injury due to the confiscation of his head scarf. Plaintiff obviously had some sort of head covering as of August 10, 2012, as Nurse Ford recorded that there were drops of blood inside of Plaintiff's cap. (Mot. Summ. J., Ex. A., doc. no. 64-1, pp. 5-6). That same recorded medical note also indicates that no burns were noted to Plaintiff's scalp. (*Id.* at p. 6).

Plaintiff claims that he suffered severe sunburn on August 28, 2012 that required

hospitalization. His medical records, however, indicate that he was transported to the prison hospital via ambulance and reported that he "got too hot and passed out." (*Id.*, doc. no. 64, p. 116). None of the medical professionals who evaluated Plaintiff on August 28, 2012, — the responding EMT, Nurse Tucker, or Dr. Santos — assessed that Plaintiff had been sunburned. (*See id.*, pp. 114-16). To the contrary, in a medical services request form Plaintiff submitted on August 28, 2012, he claims that the reason for his hospital visit was "for an anxiety attack." (*Id.*, doc. no. 64-3, p. 99). The records also indicate that Plaintiff was not hospitalized, but rather, was released back to his unit the same day. (*See id.*). The record evidence also states that two days later, Plaintiff was combative with medical staff and assessed to be malingering his complaint that the sun was burning his head. (*See id.*, doc. no. 64, p. 108).

In fact, the only treatment indicated in Plaintiff's medical records for sunburn occurred on August 21, 2012, when Nurse Ford noted that Plaintiff's scalp showed signs of "possible sunburn." (*See id.*, doc. no. 64, p. 121). On that occasion, Plaintiff was given medical salve and released back to his unit. (*Id.*).

A finding that Plaintiff was treated for a "possible sunburn" is not an injury of such a magnitude as to satisfy the requirement that Plaintiff's medical need be sufficiently serious; it is a *de minimis* injury. *See, e.g., Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (finding complaints of sleep deprivation, headaches, and weight loss amount to *de minimis* physical injuries); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (finding inmate's sore, bruised ear, lasting for three days was a *de minimis* injury). The injury alleged by Plaintiff is not compensable.

15

**Conclusion**

For the reasons set forth herein, Defendant's motion for summary judgment (doc. entry no. 60) is **GRANTED**, and the instant action is **DISMISSED WITH PREJUDICE**. A separate judgment in accordance with this Order will enter today.

**SO ORDERED** this the 15th day of January, 2014.

/s/ Michael P. Mills
**CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI**